IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BERNEST BENJAMIN,

    Plaintiff,

v.

                                                                                           No. 14-cv-0784 JB/SMV

JAMES JACKSON, LAWRENCE ARTIAGA,
and MICHAEL HOHMAN,[1]

    Defendants.

## MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Defendants Lawrence Artiaga and Michael Hohman's *Martinez* Report [Doc. 19], filed November 23, 2015, which the Court construes as a motion for summary judgment ("Motion"). Plaintiff responded on February 12 and 24, 2016. [Docs. 42, 44, 45]. Defendants replied on March 1, 2016. [Doc. 46]. On December 23, 2014, the Honorable James O. Browning, United States District Judge, referred this matter to me for analysis and a recommended disposition. [Doc. 7]. Having reviewed the pertinent filings and relevant law, and being otherwise fully advised in the premises, I find that Plaintiff failed to exhaust his administrative remedies. Therefore, I recommend that Defendant's Motion for Summary Judgment [Doc. 19] be granted and that the claims against them be dismissed without prejudice.

---

[1] Defendants indicate that the correct spelling is "Hohman," rather than "Holman." *See* [Doc. 19] at 1 n1.

## Background

Plaintiff's allegations arise from events that occurred on November 8, 2012, when Defendants Artiaga and Hohman were transporting Plaintiff and five other inmates from prisons in northern New Mexico to the Southern New Mexico Correctional Facility ("SNMCF") near Las Cruces.  *See* [Doc. 1] at 9–12; [Doc. 19-2] at 1–8.  Defendants did not provide the inmates with food or allow them to use the restroom during a stop at a gas station near Williamsburg, New Mexico.  [Doc. 1] at 9; [Doc. 19-2] at 2.  Defendants allege that they were following New Mexico Corrections Department ("NMCD") policy, which does not allow inmates to use public facilities during a transport.  [Doc. 19-2] at 9.

According to Plaintiff, after the inmates "voiced their opinions" about not being allowed to eat or use the restroom, Defendants hit the brakes, causing the inmates to fall onto the floor.  [Doc. 1] at 10.  After one of the other inmates talked back to Defendants, they pulled to the side of the road, opened the back door, and dispersed pepper spray into the area where the inmates were held.  *Id*.  Defendants allege that they dispersed the pepper spray because the inmates were rocking the van and were concerned that an accident would occur.  [Doc. 10-2] at 3.  The van continued on to SNMCF, approximately one-and-a-half hours farther south.  [Doc. 19-2] at 3; Google Maps directions for driving from Williamsburg, NM to SNMCF (last visited June 8, 2016).  Plaintiff was provided with medical attention when he arrived at SNMCF.  [Doc. 1] at 10; [Doc. 19-2] at 3.

On August 28, 2014, Plaintiff filed his Complaint under 42 U.S.C. § 1983, alleging, *inter alia*, that the dispersal of the pepper spray constituted excessive force in violation of the Eighth

Amendment.[2]  [Doc. 1] at 12.  Judge Browning issued a Memorandum Order and Opinion on June 29, 2015, dismissing all claims against Defendants Luis Urquidi, Jerry Roak, Ricardo Salayndia, and Steve Nance.  [Doc. 8].  Defendants Artiaga and Hohman filed their Answer on August 28, 2015.[3]  [Doc. 14].  The Court ordered Defendants to submit a *Martinez* Report on September 23, 2015.  [Doc. 16].  Defendants filed their Report and accompanying Motion for Summary Judgment/Motion to Dismiss on November 23, 2015.  [Doc. 19].  Plaintiff responded on February 12 and 24, 2016.  [Doc. 42, 44, 45].  Defendants replied on March 1, 2016.  [Doc. 46].

## Summary Judgment Standard

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant must support its request by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A).

The movant has the initial burden of establishing that there is an absence of evidence to

---

[2] Plaintiff was incarcerated when he filed his complaint, but since has been released. *See* [Doc. 47] (Plaintiff's Notice of Change of Address). He proceeds pro se.

[3] Plaintiff's Complaint also makes claims against Defendant James Jackson, but they relate to an entirely separate incident that allegedly occurred on June 8, 2012. [Doc. 1] at 5–9. However, Defendant Jackson has never been served.  Because Plaintiff paid the full filing fee and, thus, is not proceeding *in forma pauperis*, 28 U.S.C. § 1915(d)—which allows officers of the Court to serve process on behalf of indigent Plaintiffs—does not appear to be available.  Defendant Jackson is no longer employed by NMCD, *see* [Doc. 14] at 1, and is not represented by Defendant Artiaga and Hohman's counsel.  In response to a request from Plaintiff [Doc. 10], the Court ordered Defendants Artiaga and Hohman to produce to Plaintiff the last known address of Defendant Jackson.  [Doc. 20].  Defendants did so on December 15, 2015.  [Doc. 21].  As of the date of this PF&RD, there is no indication that Plaintiff has attempted to serve Defendant Jackson.

support the non-movant's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If this burden is met, the non-movant must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial.  *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1526 n.11 (10th Cir. 1992).  Although all facts are construed in favor of the non-movant, he still has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment."  *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

A pro se non-movant must "identify specific facts that show the existence of a genuine issue of material fact."  *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (internal quotation marks omitted).  Conclusory allegations are insufficient to establish an issue of fact that would defeat the motion.  *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1180 (10th Cir. 2013).

In a suit brought by a pro se prisoner, a court may order the defendants to investigate the plaintiff's claims and submit a report of that investigation, called a *Martinez* Report. *See Hall,* 935 F.2d at 1109; *Martinez v. Aaron*, 570 F.2d 317, 319–20 (10th Cir. 1978).  A court may use the *Martinez* Report to grant summary judgment upon motion of the defendants.  *Hall*, 935 F.2d at 1009–13; see also *Celotex*, 477 U.S. at 326 (courts possess the authority to enter summary judgment sua sponte, so long as the losing party is on notice that she must come forward with all her evidence).

## Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") sets out express limitations prior to proceeding with a viable lawsuit. Under 42 U.S.C. § 1997e(a) of the PLRA, a prison inmate is required to complete the prison administrative process before suing over prison conditions. *Booth v. Churner*, 532 U.S. 731, 733–34 (2001). The exhaustion requirement is designed to be a disincentive for prisoners who would rather bypass available internal procedures and proceed directly to a lawsuit in federal court. The hope is that some prisoner litigation may be avoided and that the suits that are brought have better documentation for the court to consider. *Woodford v. Ngo,* 548 U.S. 81, 89 (2006).

Congress has eliminated both the discretion to dispense with administrative exhaustion and the condition that administrative exhaustion be plain, speedy, and effective. Even where the available remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available. *Booth,* 532 U.S. at 739–41. The PLRA's exhaustion requirement applies to all suits arising out of prison life. *Porter v. Nussle*, 534 U.S. 516, 525 (2002); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). "[T]he substantive meaning of § 1997e(a) is clear: resort to a prison grievance process must precede resort to a court." *Steele v. Fed. Bureau of Prisons,* 355 F.3d 1204, 1207 (10th Cir. 2003) (internal quotation marks omitted), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). Accordingly, an inmate must do more than initiate the administrative grievance process; he must also complete it prior to filing suit. *Jernigan*, 304 F.3d at 1032.

In a suit governed by the PLRA, the burden of proof for the exhaustion of administrative remedies lies with the defendant. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

Defendant must prove that:  (1) administrative remedies were available to the plaintiff, and (2) the plaintiff failed to exhaust those remedies.  *Purkey v. CCA Det. Ctr.*, 2008 WL 313627, at *2, 263 F. App'x 723, 726 (10th Cir. 2008).

### Plaintiff has failed to exhaust his administrative remedies.

NMCD policy in effect on November 8, 2012, permitted inmates to grieve individual employee actions.  [Doc. 19-4] at 10.  To initiate the grievance process, the inmate is first required to file an Informal Complaint within five calendar days of the incident.   If the Informal Complaint does not resolve the issue, the inmate is permitted to file an Inmate Grievance.  The Inmate Grievance must be filed within 20 calendar days of the incident.  *Id*. at 13.  The Warden will then issue a decision, which the inmate may appeal to the Office of the Secretary of Corrections.  *Id*. at 16–17.  The policy also provides that "if a grievance is not disposed of" within the time limits set by NMCD policy, "the inmate will be deemed to have exhausted administrative remedies for that specific complaint."  *Id*. at 11.

Plaintiff alleges that he has exhausted his administrative remedies because his "grievance filed in this case/matter was never answered before the time expired" per NMCD policy. [Doc. 1] at 12.  There is no copy of an Informal Complaint or an Inmate Grievance about the pepper spray incident in the record.  However, attached to Plaintiff's Complaint is a letter, dated March 15, 2013, which Plaintiff purportedly sent to grievance officers at SNCMF and Central New Mexico Correctional Facility.  [Doc. 1-3] at 20.  In the letter, Plaintiff writes that he did not receive an answer to his grievance "about being unlawfully maced" and requests that the officers "get the grievance to me [ASAP]."  The subject line of this letter reads "Grievance Filed on 11/29/2012."  *Id*.  Plaintiff also refers to a grievance filed "on or about" November 29, 2012, in

one of his pending motions. [Doc. 35] at 1. In a reply to another of his pending motion filed more than a year after his Complaint, Plaintiff alleges for the first time that he "filed a Grievance with the Informal Complaint attached" on November 29, 2012. [Doc. 44] at 2. This is the first (and only) time in the record that Plaintiff alleges he filed an Informal Complaint.

In their *Martinez* Report, Defendants included a log of seven grievances filed by Plaintiff. [Doc. 19-2] at 31. The log was accompanied by an affidavit by Larry Phillips, the Grievance Appeals Coordinator for NMCD. *Id*. at 28. Mr. Phillips stated that he reviewed NMCD's records and did not locate any "grievance filed by Plaintiff concerning use of force on a transport on November 8, 2012." *Id*. It appears that the log is not a complete record of all grievances filed by Plaintiff, since Plaintiff attached at least one grievance to his response to the *Martinez* Report that is not included in the log. [Doc. 42-1] at 2. Defendants do not explain this discrepancy but dismiss the additional grievances as "completely irrelevant" to the pepper spray incident [Doc. 46] at 4.

Because the Court reviews the "factual record and reasonable inferences . . . in the light most favorable" to the non-movant, *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998), it will assume that the November 29, 2012, grievance to which Plaintiff refers was actually filed. Plaintiff alleges for the first time in a reply to a pending motion that he attached an Informal Complaint to his Inmate Grievance filed on November 29, 2012. [Doc. 44] at 2. He does not explain why the Informal Complaint was not resolved nor does he make any allegations regarding its timeliness. *See* [Doc. 19-4] at 13 (NMCD policy requiring Informal Complaints to be filed within five calendar days of the incident). Assuming he did timely file an Informal Complaint, his November 29, 2012, Inmate Grievance would still be untimely. A grievance

7

must be filed within 20 calendar days of the incident. [Doc. 19-4] at 13. Plaintiff says he filed his grievance 21 days after the pepper spray incident. *See* [Doc. 1-3] at 20; [Doc. 35] at 1; [Doc. 44] at 2.

In Plaintiff's response to Defendants' *Martinez* Report, he attempts to explain why there is no record of his November 29, 2012, Inmate Grievance.[4] *See* [Doc. 42] at 4–6. Plaintiff states that because inmates are not allowed to grieve the disciplinary process, grievances about that process are not logged. [Doc. 42] at 5. Plaintiff provides no support for his statement that grievances about non-grievable issues are ignored,[5] and the record indicates that just the opposite is true. *See* [Doc. 19-4] at 7 (NMCD inmate grievance policy states that "[u]nder no circumstances will an inmate be denied the right to file a grievance."); *id*. at 20 (sample inmate grievance form with option for grievance officer to check that reads "[y]our grievance is being returned to you because . . . [t]he grievance concerns material not grievable under a present policy."). However, even if Plaintiff is correct and his grievance was never logged, it would not matter. Accepting Plaintiff's version of events as true, his Inmate Grievance was filed on November 29, 2012—the 21st day. It was not timely. Thus, after assuming all of his allegations

---

[4] It is unclear if Plaintiff is talking about his grievances concerning the pepper spray incident or about the completely unrelated incident with Defendant Jackson because Plaintiff ends this section of his response by saying "a grievance filed against James Jackson was not accepted do [sic] to it was part of the disciplinary process." [Doc. 42] at 6. This PF&RD only addresses the claims against Defendants Artiaga and Hohman. In an abundance of caution, the Court assumes that Plaintiff intended his argument to apply equally to Defendants Artiaga and Hohman as well.

[5] To the extent Plaintiff intended to argue that the grievance process was not available to him, his argument fails. It is true that a prisoner will be excused from properly exhausting his administrative remedies if he was "prevent[ed], thwart[ed], or hinder[ed]" from doing so by prison officials. *Little v. Jones,* 607 F.3d 1245, 1250 (10th Cir. 2010). However, the Tenth Circuit has held that the "mandatory exhaustion requirement cannot be excused on the ground that the detainee was not informed of the grievance procedure. *Turrietta v. Barreras*, 91 F. App'x 640, 642 (10th Cir. 2004). The PLRA "says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him. The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them." *Id*. (quoting *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000)). Thus, Plaintiff's misunderstanding about the issues that were and were not grievable does not excuse his failure to exhaust.

to be true and taking the facts and reasonable inferences in the light most favorable to Plaintiff, the Court finds that he failed to exhaust his administrative remedies.

### Plaintiff's November 26, 2012, letter to the Risk Management Division does not show that he has exhausted his administrative remedies.

In the document that Plaintiff styled as his reply to Defendants' Answer,[6] Plaintiff attaches a letter dated November 26, 2012, and addressed to the Risk Management Division of New Mexico's General Services Department. [Doc. 15] at 7. The letter contains the basic allegations of his Complaint. To the extent Plaintiff intended this as proof that he exhausted his administrative remedies, it is unhelpful. "The doctrine of substantial compliance does not apply" to the PLRA's exhaustion requirement. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Plaintiff's letter to the Risk Management Division did not exhaust, nor did it even initiate, the administrative remedies available to him.

### Conclusion and Recommended Disposition

I find that Plaintiff has failed to exhaust his available administrative remedies. I therefore recommend that Defendants' Motion for Summary Judgment [Doc. 19] be **GRANTED** and Plaintiff's claims against Defendants Artiaga and Hohman be **DISMISSED without prejudice.**

In addition, I recommend that Plaintiff's pending motions for additional discovery [Docs. 24, 26, 30, 31, 32, 33, 35] be **DENIED** as moot. The Court has assumed all of Plaintiff's allegations to be true, and has considered all of the facts and reasonable inferences in the light most favorable to Plaintiff. Additional discovery would be of no use.

---

[6] A reply to an answer is only allowed if the Court orders one. Fed. R. Civ. P. 7(a). Because pro se pleadings are interpreted liberally, *see Swoboda v. Dubach*, 992 F.2d 286, 289 (10th Cir. 1993), the Court has reviewed and considered Plaintiff's reply in ruling on the Motion despite its non-compliance with the Rules.

Finally, I recommend that Plaintiff's Motion for Order to Use Doc. 15 as Amendment to Original Complaint [Doc. 34] be **GRANTED**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** *See* **D.N.M.LR-Civ. 10.1. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**